UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| JONATHAN BENTON CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CV405-119 |
| ) | |
| ST. JOSEPH'S/CANDLER HEALTH ) | |
| SYSTEM, INC. and MATTHEW ) | |
| REARDON CENTER, ) | |
| ) | |
| Defendants. ) | |

# REPORT AND RECOMMENDATION

Defendants have filed motions to dismiss plaintiff's two Title VII employment discrimination cases, which the Court has consolidated under the above case number. Docs. 7, 11; CV405-215, doc. 7. The Court converted these motions into motions for summary judgment. Doc. 34. Plaintiff has filed a response opposing the motions. Docs. 59-67. For the following reasons, defendants' motions should be GRANTED and plaintiff's complaints should be DISMISSED.

## I. Background

Defendant Matthew Reardon Center (MRC) employed plaintiff as a paraprofessional in its Advance Academy from late summer 2000 until January 2005. Doc. 7, Ex. A. During his employment, plaintiff filed two complaints with the EEOC: the first on November 26, 2003 alleging discrimination based on race and sex and the second on January 30, 2004 alleging retaliation. Doc. 12, Exs. C, D. Plaintiff filed his first formal Title VII complaint on August 19, 2005, alleging general and sexual harassment as well as discrimination on the basis of race and sex. Doc. 3. Plaintiff filed his second Title VII complaint against defendants on December 22, 2005, alleging retaliation for filing the EEOC charge which formed the basis of the first complaint. CV405-215, doc. 3.[1]

Defendant MRC filed its motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on October 21, 2005. Doc. 7. MRC contends that the Court lacks subject matter jurisdiction over it because it is not a statutory employer under Title VII, as it has never employed more than fifteen employees for twenty weeks

---

[1]The Court consolidated plaintiff's two Title VII complaints under Case No. CV405-119 in an Order dated March 21, 2006. CV405-119, doc. 33.

or more in any given year, as required by 42 U.S.C. § 2000e(b). Id. MRC further contends that its operations are significantly independent from St. Joseph's so that it cannot be held liable under either a single/integrated employer or joint employer theory. Id.

Defendant St. Joseph's filed its motion to dismiss plaintiff's complaints against it on October 24, 2005, also asserting that the Court lacks subject matter jurisdiction over it because it was not plaintiff's employer. Doc. 11. St. Joseph's asserts that plaintiff never provided any services to it and that it did not possess any degree of control over the employment decisions that form the basis of this lawsuit, and therefore it cannot be considered plaintiff's employer. Id. St. Joseph's further asserts that it is a distinct and independent entity from MRC and therefore should not be considered a joint employer with MRC.

Plaintiff submitted a response to these motions to dismiss on November 7, 2005, essentially asserting that the human resources of MRC and St. Joseph's were so interrelated that the Court should deem them either a single employer or joint employers for Title VII purposes. Docs. 14, 15. Plaintiff did not contest MRC's assertion that it does not employ the

3

requisite number of employees to qualify as a Title VII employer. Id. Plaintiff instead asserts that he was an employee of St. Joseph's through MRC. Id. Defendants each submitted replies to plaintiff's responses reiterating the independence of their operations. Docs. 21, 22.

The Court converted defendants' motions to dismiss into motions for summary judgment on March 29, 2006. Doc. 34. In its decision in Arbaugh v. Y & H Corp., 125 S. Ct. 1235, 2006 WL 397863 (2006), the Supreme Court held that the employee-numerosity requirement of Title VII is an element of plaintiff's claim for relief rather than a jurisdictional requisite. In light of that decision, the Court determined that defendants' motions were best considered as asserting that plaintiff could not prove that either defendant was his employer as defined by Title VII, an essential element of his cause of action. Doc. 34. The Court, therefore, converted defendants' motions to dismiss into motions for summary judgment and gave plaintiff additional time to supplement the record with documents and other evidence that supported the allegations in his complaints. Id. The Court also explained to plaintiff that the disposition of the case on a motion for summary judgment was a final adjudication on the merits and precluded

future litigation. Id.

Plaintiff then filed a motion for an extension of time in which he could engage in discovery pursuant to Federal Rule of Civil Procedure 56(f) in order to support his opposition to defendants' motions. Doc. 37. On April 19, 2006, the Court granted plaintiff a forty-five day period in which to engage in limited discovery so that he could obtain evidence to support his contention that defendants were in fact his employer for Title VII purposes. Doc. 41. Plaintiff conducted depositions and other discovery during this period, and he has filed his response to defendants' summary judgment motions, along with copies of the depositions he conducted and other supporting documents. Docs. 59-67. Defendants have each filed a reply to plaintiff's response. Docs. 72, 73.

## II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure requires a court to enter summary judgment where the record, taken as a whole, establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "An issue of fact is

'material' if it might affect the outcome of the case under the governing laws. . . . It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baker v. Sears, Roebuck & Co., 903 F.2d 1515, 1518 (11th Cir. 1990)(citations omitted).

The moving party "always bears the initial responsibility of informing the [trial] court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has shown that the party bearing the burden of proof at trial lacks evidence on an essential element of his claim, the burden of production shifts to the nonmoving party "to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Rule 56(e)).

"Although reasonable inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, that party 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment' to show that there is a genuine issue for

trial." Tidmore v. BP Oil Co./Gulf Products Div., 932 F.2d 1384, 1387 (11th Cir.), cert. denied, 502 U.S. 925 (1991)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). A mere scintilla of evidence supporting the non-moving party's position will not fulfill its burden. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). The Court must consider the entire record in the case, not just those portions of the record which have been singled out for attention by the parties. Baker, 903 F.2d at 1515.

## III. Analysis

Title VII makes it unlawful "for an employer . . . to discriminate against any individual" on any of several enumerated grounds, including race and sex. 42 U.S.C. § 2000e-2(a)(1). Title VII also protects an employee from retaliatory conduct by his employer after an employee files a charge of discrimination against the employer. 42 U.S.C. § 2000e-3(a). The statute defines "employer" as including only those entities which employ fifteen or more employees for each working day for a period of at least twenty weeks a year. 42 U.S.C. § 2000e(b). In some circumstances, two separate entities may be treated as a single "employer" under Title VII despite the fact that

one of the entities does not meet this employee-numerosity requirement. If the operations of the two entities are significantly interrelated, a court may consider the entities as one under either a single/integrated or joint employer theory.

The Eleventh Circuit gives the term "employer" a liberal construction under Title VII. See Lyes v. City of Riviera, Fla., 166 F.3d 1332, 1341 (11th Cir. 1999); Virgo v. Riviera Beach Associates, Ltd., 30 F.3d 1350, 1359 (11th Cir. 1994); McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 933 (11th Cir. 1987). A court will aggregate multiple entities for purposes of counting employees in three circumstances. Lyes, 166 F.3d at 1341. First, where the operations of two entities are so intertwined that they operate as one, the Court will deem the two entities a single employer. Id. Second, where two entities contract for a specific task and one entity retains control over the employees of the other, the court will consider the two entities joint employers. Id. Finally, where an employer delegates sufficient control over employees to a third party, the court will aggregate the entities under an agency theory.[2] Id.

---

[2] Plaintiff does not contend that this agency theory applies to the instant case and instead focuses on trying to establish defendants' liability under the single and joint employer theories.

### a. Employee-Numerosity Requirement

An "employer" for Title VII purposes is one that employs "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year." 42 U.S.C. § 2000e(b). MRC submitted payroll records showing the date of each pay period and the number of employees paid in each period from May 2001 through December 2005. Doc. 7, Ex. A; Doc. 39, Ex. A. These records demonstrate that MRC paid more than fifteen individuals for only four two-week pay periods in each of the years of plaintiff's employment; therefore, MRC only employed more than fifteen individuals for eight weeks of each year. Id.

Plaintiff contends that several summer employees hired by MRC should be counted as employees of MRC beyond the summer for which they were hired because the employees remained on MRC's payroll after the summer. Doc. 63, Ex. 1 at ¶22. To count an employee for Title VII purposes, the individual must have an "employment relationship" with the employer. Walters v. Metro. Educ. Enters., Inc., 519 U.S. 202 (1997). While this relationship is most often shown by an individual's presence on an entity's payroll, this is not dispositive. Id. at 206, 211. An individual

must still have an "employment relationship" with the entity in order to qualify as an employee of that entity. Id. at 211.

MRC hired individuals every summer to assist in its summer programs, and these individuals had a particular starting and ending date from the outset of their employment. Doc. 73, Ex. C at 39, lines 12-15. Even though these individuals may have remained on MRC's payroll records, their employment relationship with MRC ended the day their specific period of employment expired and they no longer provided services to MRC. Id. at 62, lines 23-25, at 63, lines 1-7. These individuals can only be counted as employees of MRC for Title VII purposes during the period of time that they had an employment relationship with MRC. See Walters, 519 U.S. at 211 ("the ultimate touchstone under § 2000e(b) is whether an employer has employment relationships with 15 or more individuals for each working day in 20 or more weeks during the year in question"). The employment relationship that these temporary summer employees had with MRC ended at the conclusion of MRC's summer program. The payroll records reflect an increase in MRC's employees during the eight weeks of the summer program, but these eight weeks are the only weeks in which

MRC employed more than fifteen employees. Doc. 7, Ex. A; Doc. 39, Ex. A. MRC, therefore, cannot satisfy the employee-numerosity requirement of § 2000e(b) and, standing alone, cannot be considered a statutory employer under Title VII.

**b. Single Employer Analysis**

Where two ostensibly separate entities are "highly integrated with respect to ownership and operations," a court may consider them as a single employer under Title VII. Lyes, 166 F.3d at 1341; McKenzie, 834 F.2d at 933 (internal quotations omitted). In determining whether two non-governmental entities should be consolidated and considered as a single employer, the Eleventh Circuit applies standards promulgated by the National Labor Relations Board. Lyes, 166 F.3d at 1361. These standards establish four criteria for courts to consider in deciding whether two entities comprise a single employer: the interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control. Id.; see also Radio and Television Broadcast Technicians Local 1264 v. Broadcast Service of Mobile, Inc., 380 U.S. 255, 256 (1965). In applying these factors to private entities in Title VII cases,

no single factor is controlling and each factor is not required. Lyes, 166 F.3d at 1341, n.5.

Courts look to factors such as whether two entities have combined accounting records, bank accounts, lines of credit, payroll preparation, switchboard, telephone numbers, or offices in order to assess the interrelation of operations. See Fike v. Gold Kist, Inc., 514 F. Supp. 722, 726 (N.D. Ala. 1981), *aff'd* 664 F.2d 295 (11th Cir. 1981); see also Western Union Corp. v. United Telegraph Workers, 224 NLRB 274, 277, *aff'd* 571 F.2d 665 (D.C. Cir. 1978). Although MRC utilized office space provided by St. Joseph's and St. Joseph's provided payroll services and access to some healthcare and other benefits to MRC employees during plaintiff's employment, MRC maintained its own bank accounts, offices, equipment[3] and storage facilities, kept its own business records and performed its own marketing. Doc. 7, Ex. A at ¶¶ 9, 21-22; Doc. 7, Ex. B at ¶¶ 7, 11-12. While St. Joseph's provided space for MRC to use, St. Joseph's offices were separate and the two entities did not share the space provided to MRC.

---

[3]Specifically, MRC owned all the equipment it used in the course of its business, such as computers, cabinets, desks, chairs, and other movable equipment, despite occupying space in St. Joseph's building. Doc. 73, Ex. C at 15, lines 13-17, at 16, lines 17-22.

Doc. 73, Ex. A at 12, lines 12-15. Plaintiff incorrectly asserts that MRC does not have its own bank account because payroll checks are drawn on St. Joseph's bank account. Doc. 61. St. Joseph's administered payroll services for MRC, and therefore payroll checks were issued from St. Joseph's bank account. The mere fact that St. Joseph's issued payroll checks does not indicate that St. Joseph's was paying plaintiff or that it was his employer. MRC reimbursed St. Joseph's for these payroll services, including the salary costs and the portion of the benefits paid by the employer, on a monthly basis with a check drawn on an account titled solely in the name of MRC. See Doc. 72, Ex. F. Thus, MRC paid plaintiff's salary and employer-provided benefits from its own separate banking account. From an operational perspective, MRC and St. Joseph's are separate, independent entities.

The second factor, centralized control of labor relations, also fails to support plaintiff's contention that MRC and St. Joseph's are a single employer. This factor may be demonstrated by such "indicia of control" as the authority to hire, transfer, promote, discipline, or discharge; authority to establish a work schedule or to direct work assignments; and the

obligation to pay or duty to train the charging party. <u>Lyes</u>, 166 F.3d at 1345. MRC retained complete discretion to terminate and/or discipline its employees, and St. Joseph's had no authority to hire or fire MRC employees. Doc. 7, Ex. A at ¶ 26; Doc. 73, Ex. A at 17, lines 12-18; Doc. 73, Ex. B at 8, lines 7-10; Doc. 73, Ex. C at 38, lines 7-8. MRC and St. Joseph's have separate management, and MRC supervisory personnel do not supervise St. Joseph's employees. Doc. 7, Ex. A at ¶23. Further, MRC addresses employee complaints and makes ultimate discipline and other employment decisions. <u>Id.</u> at ¶24. MRC made the decisions relating to plaintiff and his employment with MRC. <u>Id.</u> The absence of any participation by St. Joseph's in making the employment decisions affecting MRC employees is fatal to a claim that the two companies have any centralized control of labor relations.

The final two factors, common management and common ownership or financial control, also fail to support a finding that MRC and St. Joseph's are a single employer for Title VII purposes. MRC and St. Joseph's are separately incorporated under Georgia law and have separate and distinct officers and directors. Doc. 7, Ex. A at ¶¶ 18-19; Doc. 7, Ex. B at ¶¶ 8-9.

The two companies have different governing bodies and no member of the St. Joseph's Board of Directors serves on the Board of MRC. Doc. 7, Ex. A at ¶19; Doc. 7, Ex. B at ¶9; see also Doc. 73, Ex. A at 6, lines 17-20; Ex. B, at 22, lines 14-17; Ex. C at 21. Plaintiff argues that since St. Joseph's provided "free" rent to MRC, the two entities possessed the requisite common management and ownership to be considered a single employer. St. Joseph's, however, was not providing "free" rent to MRC in order to retain control over the operations of MRC, but was complying with the Internal Revenue Code, which requires St. Joseph's to provide "community benefits" in order to maintain its non-profit status under § 501(c)(3). Doc. 72, Ex. C at 12, lines 4-9; see also Doc. 72, Ex. D at 35, lines 21-22, at 36, lines 2-4. Such an arrangement does not indicate that St. Joseph's participated in the management, ownership, or financial control of MRC.

A thorough analysis of the above factors demonstrates that MRC and St. Joseph's are independent entities and do not share the degree of interrelation necessary to be deemed a single employer for Title VII purposes.

### c. Joint Employer Analysis

Under the joint employer theory of liability, a Court will consider two entities joint employers and aggregate them for Title VII purposes where they "contract with each other for the performance of some task and one company retains sufficient control over the terms and conditions of employment of the other company's employees." Lyes, 166 F.3d at 1341; Virgo, 30 F.3d at 1359-1360. The focus is on "the degree of control an entity has over the adverse employment decision on which the Title VII suit is based." Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1244-45 (11th Cir. 1998).

In the instant case, MRC contracted with St. Joseph's to provide administrative payroll services and access to certain healthcare and other benefits, such as YMCA membership and cafeteria discounts, to MRC employees. Doc. 73, Ex. A at 5, lines 8-11. St. Joseph's also agreed to provide operational space to MRC. Id. As part of this agreement, St. Joseph's not only issued pay checks, tax documents, and separation notices to MRC employees, but also provided identification badges to MRC employees and performed other administrative human resource functions.

Plaintiff asserts that St. Joseph's' provision of these services to MRC proves that he was an employee of St. Joseph's. Doc. 63, Ex. 1. The evidence does not support plaintiff's contention, however, since these services only relate to administrative payroll functions and no evidence exists which shows that St. Joseph's exercised any control over employment decisions concerning MRC employees. Tax documents, separation notices, and identification badges, despite being issued by St. Joseph's, are merely administrative documents issued in the course of payroll administration. They do not change the nature of the relationship between MRC and St. Joseph's and do not vest any authority to control personnel matters related to the employees of MRC in St. Joseph's.

Plaintiff has failed to offer evidence that St. Joseph's retained any control over employment decisions involving MRC employees, and in fact the evidence offered by defendants is contrary. As noted above in Section III(b), St. Joseph's did not have authority to hire, fire, or discipline MRC employees, and did not assign jobs, duties, or responsibilities to MRC employees. Doc. 72, Ex. G at ¶¶ 5, 7, 10; Ex. H at ¶¶ 7, 9, 10. Further, St. Joseph's did not conduct performance evaluations or decide on promotions,

demotions, pay rates, raises, or work hours. Id. While MRC may have occasionally consulted with St. Joseph's on "discreet employment issues," it addressed employee complaints itself and made the ultimate employment decisions regarding its employees. Doc. 7, Ex. A at ¶¶ 24, 26; Doc. 7, Ex. B, at ¶¶ 14, 16. The evidence further shows that MRC had disciplined plaintiff on several occasions and made decisions related to plaintiff and his employment with MRC. Id. St. Joseph's merely provided administrative support to MRC and exercised no control over employment decisions involving MRC employees.

The ultimate focus of the joint employer inquiry is the degree of control one company exercises over the employees of another company. Lyes, 166 F.3d at 1341; Virgo, 30 F.3d at 1359-60. Plaintiff fails to demonstrate that St. Joseph's did anything beyond provide basic administrative services to MRC. Although St. Joseph's provided payroll services to MRC and provided some benefits options to MRC employees, it did not maintain control over the employment decisions at MRC generally or in regard to plaintiff specifically. Doc. 7, Ex. A at 24; Doc. 72, Ex. H, at ¶9. Furthermore, merely providing benefits, insurance, and payroll

administration does not establish central control of labor relations that is present in a joint employer situation. See Watson v. Adecco Employment Services, Inc., 252 F.Supp.2d 1347, 1356 (M.D. Fla. 2003) (mere fact company issues paychecks to plaintiffs is not alone sufficient to establish Title VII employer status); Astrowsky v. First Portland Mortgage Corp. Inc., 887 F. Supp. 332, 335-37 (D. Maine 1995) (provision of benefits and payroll administration not enough to evidence joint employer relationship). Thus, plaintiff has failed to show that St. Joseph's exercised any control over MRC employees, and absent such a showing, no joint employer status exists between MRC and St. Joseph's.

## IV. Conclusion

Based on the foregoing, plaintiff has failed to prove an essential element of his cause of action under Title VII, i.e., that MRC is a covered employer for Title VII purposes. MRC itself fails to qualify as an employer under Title VII since it does not employ more than fifteen individuals for more than twenty weeks a year. MRC and St. Joseph's cannot be considered a single employer or joint employers because their operations

lack any significant degree of interrelation. MRC retained control over all the fundamental aspects of the employment relationship that gave rise to the instant complaint, thus rendering it alone plaintiff's employer. Plaintiff has failed to meet his burden of proving that either defendant was his employer as contemplated by Title VII. Accordingly, defendants' motions for summary judgment should be GRANTED and plaintiff's complaints should be DISMISSED.

**SO REPORTED AND RECOMMENDED** this 14th day of July, 2006.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA